UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D'MARGIO PHIPPS, a minor, by his Mother
and Next Friend, BRIDGET PHIPPS,

       Plaintiff,

                                         Case No. 11-11706

v.                                      Hon. Lawrence P. Zatkoff

OFFICER SCOTT GOECKER, in his individual
and official capacity, MT. MORRIS TOWNSHIP,
OFFICER NICK PAUL, in his individual and official
capacity, and CITY OF SWARTZ CREEK,
jointly and severally,

       Defendants.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on June 21, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on the following motions, each of which has been fully

briefed:

    1.      Motion for Summary Judgment filed by Nick Paul and City of Swartz Creek (Docket #18); and

    2.      Motion for Partial Summary Judgment filed by Scott Goecker and Mt. Morris Township (Docket #20).

The Court finds that the facts and legal arguments are adequately presented in the parties' papers

such that the decision process would not be significantly aided by oral argument. Therefore,

pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the

briefs submitted.  For the following reasons, both Motions are GRANTED insofar as they relate to the 42 U.S.C. § 1983 claims at issue therein.[1]

## II. BACKGROUND

In deciding a motion for summary judgment, the Court must view all facts in a light most favorable to the non-moving party.  In this case, that means viewing all facts in favor of Plaintiff.

On Sunday morning, January 30, 2011, shortly after midnight, sixteen year old D'Margio Phipps (hereinafter, "Plaintiff"), together with his friend, broke into an elementary school located in Mt. Morris Township ("Township").  While doing so, they tripped an alarm and the Township police officers responded.  After Township police officer Scott Goecker ("Goecker") arrived at the school, Plaintiff and his friend ran out of the school.  Goecker initially pursued the suspects, but he then returned to the school where he met City of Swartz Creek (the "City") police officer Nick Paul ("Paul").  Paul was there in response to a call for back-up and a canine unit.  Paul brought Ike, a police dog, with him.

Goecker, Paul and Ike then tracked and searched for Plaintiff and his friend, following two sets of footprints in the foot-high, mostly new-fallen snow.  The tracks of the suspects eventually separated, signifying that Plaintiff and his friend split up.  Goecker, Paul and Ike followed the tracks of Plaintiff's friend until they were alerted that Plaintiff's friend had been apprehended.  After

---

[1]In both the Motion for Summary Judgment and the Motion for Partial Summary Judgment, the defendants argued that they were entitled to summary judgment with respect to the state law claims set forth in Plaintiff's Complaint.  As all parties eventually realized, however, the Court had dismissed, without prejudice, all of Plaintiff's state law claims shortly after this case was filed.  *See* Docket #4.  Therefore, as the Court did not retain jurisdiction over Plaintiff's state law claims, the Court does not address their viability in this Opinion.

doubling back to where the two sets of footprints diverged, Goecker, Paul and Ike tracked the footprints created by Plaintiff. At some point during this period, Plaintiff elected to lay down in the snow because he knew he was going to be caught by the police. As Plaintiff heard Goecker, Paul and Ike approach, Plaintiff continued to lay face down in the snow, with his hands underneath him.

Plaintiff states that he saw the police dog (Ike) running and barking at him, with the officers (Goecker and Paul) "way behind." As Plaintiff continued to lay face down with his hands underneath him, Ike apprehended Plaintiff by grabbing Plaintiff's left shoulder with his teeth. After Plaintiff moved his hands to push Ike away, Ike bit Plaintiff in the left ear. According to Plaintiff, neither officer said anything to Plaintiff or Ike before Ike attacked Plaintiff. Plaintiff also states that, while Ike was biting Plaintiff, Goecker was kneeling on the ground next to Plaintiff. Plaintiff states that, as he was lying submissively in the snow and saying that he surrendered, Goecker punched Plaintiff at least 3 times in the body and left eye and side of his face. Plaintiff states that Paul was standing at the scene as Gocker was hitting Plaintiff, but Paul did not say or do anything to stop Goecker.

After Paul called Ike off of Plaintiff, Goecker handcuffed Plaintiff, pulled Plaintiff to his feet and escorted Plaintiff to the Township police department. There, Plaintiff received medical treatment for his wounds before he was released into his parents' custody. Plaintiff's parents took Plaintiff to the emergency room at Hurley Hospital, and Plaintiff was treated for his injuries to his left shoulder and face, including stitches for a laceration below his left eye, and released.

Plaintiff filed an eight count Complaint, including: (a) a separate 42 U.S.C. § 1983 excessive force claim against each of the four defendants, (b) state law battery claims against each of Paul and Goecker, (c) a state law intentional infliction of emotional distress claim, and (d) a state law gross

negligence claim.  The Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims and dismissed those claims, without prejudice.  In addition, the Court has entered an order pursuant to a stipulation between Plaintiff and Goecker, wherein the parties agreed to dismiss Plaintiff's § 1983 excessive force claim against Goecker to the extent that claim is based on allegations that Goecker could be held liable for the actions of Paul or Ike.

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").  A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot
> produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving

4

party. *Celotex*, 477 U.S. at 323.   The moving party discharges its burden by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

# IV. ANALYSIS

Plaintiff has asserted a § 1983 excessive force claim against each of the four defendants.  The Court addresses Plaintiff's claim against each Defendant separately.

## A.    Scott Goecker

Goecker acknowledges that, as all evidence must be construed in Plaintiff's favor for purposes of a Rule 56 motion, Plaintiff's § 1983 excessive force claim against Goecker for the three punches Goecker is alleged to have made against Plaintiff would survive a motion for summary judgment.  Accordingly, there are no issues to address with respect to Goecker, and Plaintiff's § 1983 excessive force claim against Goecker with respect to those punches remains before this Court.

## B.    Mt. Morris Township

5

The Township argues that Plaintiff has failed to provide any evidence: (1) of an unconstitutional policy, procedure or custom of the Township, (2) that there was a lack of training or supervision of Goecker, or (3) any direct, causal link between such allegations and the alleged excessive force used by Goecker.

A municipal or governmental entity defendant can be found liable for the violation of a constitutionally protected right only if the plaintiff can establish that an officially executed policy, or the toleration of a custom of such municipality or governmental entity, leads to, causes or results in the deprivation of such rights. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). *See also City of Canton v. Harris*, 489 U.S. 378 (1989). Therefore, Plaintiff must not only identify a policy or custom, he must connect the policy or custom to the Township and show causation between the particular injury and the execution of that policy or custom. *Garner v. Memphis Police Dept., on remand,* 8 F.3d 358, 364 (6th Cir. 1993). *See also Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 442 (6th Cir. 2000).

*Respondeat superior* is not available as a theory of recovery in a Section 1983 action, as "[a] municipality may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). *See also Monell*, 436 U.S. at 690-91. Accordingly, in order to have a viable action against the Township, Plaintiff must demonstrate that the Township itself is the wrongdoer. *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992).

In this case, Plaintiff asserts that the Township is liable for failure to train Goecker. As set forth by the Sixth Circuit:

> The [Township] is liable under § 1983 for failure to train if the Plaintiff can prove three elements: (1) "that a training program is

6

> inadequate to the tasks that the officers must perform"; (2) "that the
> inadequacy is the result of the [Township]'s deliberate indifference";
> and (3) "that the inadequacy is 'closely related to' or 'actually
> caused' [Plaintiff's] injury."

*Plinton v. County of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *Hill v. McIntyre*, 884 F.2d

271, 275 (6th Cir. 1989) (citing *Harris*, 489 U.S. at 389-91)).

> To show deliberate indifference, Plaintiff "must show prior instances
> of unconstitutional conduct demonstrating that the [Township]
> has ignored a history of abuse and was clearly on notice that the training
> in this particular area was deficient and likely to cause injury." *Fisher
> v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005). In the alternative, "a
> single violation of federal rights, accompanied by a showing that a
> municipality has failed to train its employees to handle recurring
> situations presenting an obvious potential for such a violation, could
> trigger municipal liability." *Bd. of County Comm'rs of Bryan County
> v. Brown*, 530 U.S. 397, 409 ... (1997).

*Plinton*, 540 F.3d at 464.

The entirety of Plaintiff's argument regarding the Township's liability is:

> Here, Defendant Goecker testified that although he has been
> employed as a patrol officer with [the] Township for a period of
> years, he has never received any training from [the] Township
> relative to citizen's constitutional rights or how to conduct a lawful
> arrest or what constitutes excessive force. . . . Defendant Goecker's
> actions in beating the body and face of a helpless and compliant boy
> further demonstrat[es] that [the] Township has failed to adequately
> train its officers to protect citizens from brutal attacks committed by
> police officers.

> [The] Township's deliberate indifference and failure to train
> its police officers allows its police officers to violate citizens'
> constitutional rights causing severe physical and psychological
> injuries. Due to such inadequate training, Plaintiff respectfully
> requests that Defendants' Motion for Partial Summary Judgment as
> to §1983 municipal liability be denied.

Thus, taking Plaintiff's conclusory arguments in a light most favorable to Plaintiff, the Court

finds that the "evidence" upon which Plaintiff bases his claim against the Township consists of the

7

following: (a) Goecker beat Plaintiff's body and face, and (b) the Township never trained Goecker regarding "citizen's constitutional rights or how to conduct a lawful arrest or what constitutes excessive force."

First, contrary to Plaintiff's assertion that the Township never trained Goecker regarding "citizen's constitutional rights or how to conduct a lawful arrest or what constitutes excessive force," Goecker testified that he had taken classes or received training from the Township and other entities or agencies. Specifically, Goecker testified that he had classes or training on what constitutes a lawful arrest at "Eastern Michigan [University] as well as at U of M [University of Michigan] and then continued on with both [police] academies" that he graduated from. Goecker also expressly testified that: (1) among other training he received through the Township, he had a "criminal law refresher course," (2) the Township had trained him on "force continuum based on Michigan's laws of arrest force continuum," and (3) he was familiar with force continuum, which means that "as police officers, [they are allowed] to use one step more, one step greater force than is being used against us in order to make a – to [e]ffect an arrest." Based on this evidence, the Court holds Plaintiff has not made a "showing that the [Township] failed to train its employees [specifically Goecker] to handle recurring situations presenting an obvious potential for such a violation," such that municipal liability could be triggered as a result of the beating of Plaintiff by Goecker.

Second, this Court concludes, as a matter of law, that such "evidence" does not rise to the level of deliberate indifference, even if there was inadequate training. Plaintiff has not alleged, or proffered evidence, that Goecker (or, for that matter, any Township police officer) has a history of physical abuse against citizens such that the Township should have been "clearly on notice that the training in this particular area was deficient and likely to cause injury." *Plinton*, 540 F.3d at 464

8

(citations omitted).

Accordingly, and for the reasons set forth above, the Court GRANTS the Motion for Partial Summary Judgment filed by the Township and dismisses Plaintiff's § 1983 excessive force claim against the Township.

**C.     Nick Paul**

In order to hold an officer liable for excessive force, a plaintiff must prove that the officer: (1) actively participated in the use of the excessive force; (2) supervised the officer who used the excessive force; or (3) owed the victim a duty of protection against the use of excessive force. *Turner v. Scott*, 119 F.3d 425, 439 (6th Cir. 2006). Plaintiff alleges that Paul is liable for the use of excessive force as described in the first and third parts above because: (a) with respect to the use of the police dog (Ike), Paul "deploy[ed] the police dog under his control without warning," and (b) Paul failed to intervene and prevent or stop Goecker's use of excessive force.

  *1.      Applicable Law*

> The Supreme Court has held that "all claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure'" should be analyzed under the Fourth Amendment's "objective reasonableness" test.

*Matthews v. Jones*, 35 F.3d 1046, 1050 (6th Cir. 1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "[T]he objective-reasonableness standard . . . depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 395-96). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S.

9

at 396-97. "Relevant considerations include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Fox*, 489 F.3d at 236 (quoting *Graham*, 490 U.S. at 396).

        2.      *Deployment of the Police Dog (Ike)*

        In support of his summary judgment motion, Paul relies on two cases where the Sixth Circuit affirmed summary judgment in favor of defendant police officers/police departments after a police dog severely injured or caused the death of a suspect in the course of apprehending the suspect. In *Robinette v. Barnes*, 854 F.2d 909 (6th Cir. 1988), a claim was brought on behalf of a deceased burglary suspect who was hiding from police officers and a police dog in the building that the suspect burglarized. The suspect was apprehended by the canine, which grabbed the suspect's neck and caused the suspect's death. The Sixth Circuit affirmed the district court's summary judgment ruling in favor of the defendant police officers and municipality, as described in *Matthews v. Jones*, 35 F.3d 1046, 1051 (6th Cir. 1994):

> "More importantly, we find that the use of a properly trained police dog to apprehend a felony suspect does not carry with it a 'substantial risk of causing death of serious bodily harm,'" and that "when a properly trained police dog is used in an appropriate manner to apprehend a felony suspect, the use of the dog does not constitute deadly force." *Id.* at 912-13 (footnote omitted). We noted that although a § 1983 action might lie if the dog had been improperly trained, the plaintiff would be required to show that the improper training resulted from something more than negligence. *Id.* at 912 n.3. Finally, we held that even if the use of the police dog to apprehend a suspected felon did constitute deadly force, the use of such force in the circumstances of that case was not unreasonable, concluding that where the officer was forced to explore an enclosed unfamiliar area in which he knew a man was hiding, the officer would have reasonably believed that the suspect posed a threat to the officer and others. *Id.* at 914.

In *Matthews*, plaintiff brought an § 1983 excessive force action against a police officer and police department after being severely bitten by a police dog during the course of arrest. The following facts were critical to the *Matthews* court's ruling:

> In the case at hand, it is not disputed that the officers on the scene did not know the extent of crimes that Matthews might have committed nor did they know whether he was armed. Neither is it disputed, however, that the police officer pursuing Matthews had legally sufficient grounds to stop him, and that before the officer could do so, Matthews fled from his car into a densely wooded area in the dark of night. Matthews was obviously fleeing in an attempt to evade the police; the area into which he fled in the darkness provided a strategic advantage to Matthews in that he could easily ambush the officers; and Matthews extreme behavior provided cause for the officers to believe that he was involved in activity considerably more nefarious than mere traffic violations.

*Id.* at 1051. Thus, the *Matthews* court held that:

> [A] reasonable police officer under th[o]se circumstances would have believed that Matthews posed a threat to the officers' safety as well as the safety of others, and that this case cannot be distinguished from *Robinette* on the basis of the officer's lack of specific cause to believe Matthews was a felon.

*Id.*

The *Matthews* court also stated:

> The *Robinette* court held that there was no evidence that the police dog used to find the suspect had been improperly trained or that the officer commanding the dog had intended to create a "'substantial risk of causing death or serious bodily harm.'" *Robinette*, 854 F.2d at 912 (quoting Model Penal Code § 3.11(2) (Proposed Official Draft 1962)). We have already held that the record here contains no evidence of inadequate or improper training of Roscoe [the police dog]. Further, we hold that this record contains no evidence whatsoever of an intent on the part of Officer Watkins to create a substantial risk of death or serious bodily harm.

*Id.* Accordingly, the *Matthews* court affirmed summary judgment in favor of the defendants:

11

> We hold that it is clear from the evidence presented in support of and in opposition to the motion for summary judgment on the original complaint that there is no dispute as to the facts material to the issue of whether use of the police dog to apprehend Matthews constituted excessive force, and that no reasonable jury could conclude that the use of the police dog to apprehend Matthews was not objectively reasonable.

*Id.* at 1052.

In response to Paul's argument, Plaintiff extensively discussed a recent case from the Southern District of Ohio, *Campbell v. City of Springboro, Ohio*, 788 F.Supp.2d 637 (S.D. Ohio 2011), and cited a numerous cases from outside the Sixth Circuit.  None of those case are binding on this Court, however, and the Court does not find any of them persuasive with respect to the facts of this case.  Plaintiff briefly noted the existence of *Robinette* and *Matthews* in acknowledging, as the *Campbell* court did, that the Sixth Circuit has refused to label as unreasonable the general practice of using police dogs to aid in locating and apprehending suspects. *Campbell*, 788 F.Supp.2d at 668 (citing *Robinette and Matthews*).

Plaintiff then discussed a third police dog case, *White v. Harmon*, 1995 WL 518865 (6th Cir. 1995), wherein the Sixth Circuit concluded that, under the facts of that case, the use of a police dog could support a claim of unreasonable use of force.  The facts of *White* included the following:

A.    A canine handler requested that two officers hold off placing a suspect into the police car until the canine handler and the police dog arrived on the scene, even though the fleeing suspect had already been apprehended and handcuffed by the police officers.

B.    The canine handler knew that the police dog "had bitten someone on a previous occasion."

C.    When the canine handler and the police dog arrived on the scene, the officers yanked the suspect to his feet and the police dog bit the suspect on the elbow before the canine handler could order the police dog to stop.

D.    The canine handler had "virtually no canine-handling training," aside from being

12

given a written policy (the contents of the policy were not specified in the record).

E.     There was no evidence on the record that the police dog had received any training.

F.     Counsel for the canine handler asserted that both the canine handler and the police dog were "certified," but no evidence was offered that either the canine handler or the police dog had received any "tracking" training.

*Id*. at *1-2. Based on the foregoing facts, and in the words of Plaintiff in his response brief, the *White* court held that a "canine handler could be held liable for excessive force where[: (1)] the handler brought a little-trained dog to an arrest scene[,] and [2] failed to prevent the dog from biting the plaintiff [suspect], who had already been handcuffed." *Id*. at *3.

In this case, Plaintiff argues that the facts taken in a light most favorable to Plaintiff establish that a constitutional violation occurred.  Plaintiff's argument is premised on the belief that the Court must assume that the "police dog was deployed without warning on a suspect already down on the ground in a submissive position and that the dog was provided plenty of time to bite Plaintiff's shoulder and maul Plaintiff's ear prior to being ordered to stop."  The Court notes, however, that although some of Plaintiff's premised belief is accurate, there are critical parts of Plaintiff's premise that are inaccurate and other parts of Plaintiff's premise that ignore certain significant, undisputed facts in this matter.

Assuming Plaintiff's testimony is true, Plaintiff's premise accurately notes that the police dog was deployed without warning and Plaintiff was laying on the ground.  It is not clear, however, even from Plaintiff's testimony, that: (a) Plaintiff was in a "submissive position," or (b) the police dog was provided "plenty of time to bite Plaintiff's shoulder and maul Plaintiff's ear prior to being ordered to stop."  Nonetheless, for purposes of this Opinion, the Court will assume that such statements are accurate. More importantly, Plaintiff's argument ignores the following **<u>undisputed</u>**

13

facts:

    (1)     Goecker and Paul did not know if Plaintiff was armed,

    (2)     Plaintiff's hands were underneath him and not visible to the officers,

    (3)     The police dog only held Plaintiff by the shoulder until such time as Plaintiff "moved the [police] dog's snout" by striking or hitting the police dog in the face or nose, and only after that event did the police dog bite Plaintiff in the ear, and

    (4)     The police officer(s) ran toward Plaintiff/followed the police dog as the police dog ran toward Plaintiff.

Based on the facts of this case, the Court finds this case is far more similar to *Robinette* and *Matthews* than it is to *White*. First, as in *Robinette* and *Matthews*, Paul had no idea whether Plaintiff was armed. Second, as in *Matthews* and *Robinette*, Paul was chasing after a fleeing felon (who, as far as he knew, was armed): (a) in an unfamiliar area, (b) in the dark of night "through the back streets" and over "six" fences and through people's gates and yards (Plaintiff's words), and (c) while Plaintiff was either hiding or otherwise moving in an area that provided Plaintiff with a strategic advantage over Paul and Goecker (by going over fences and through gates, and then, ultimately, hiding "behind an abandoned house"), such that Plaintiff could have easily ambushed them.

Third, this case differs significantly from *White* in that: (1) Plaintiff was not in handcuffs when the police dog apprehended Plaintiff, (2) there is no evidence that the police dog in this case had inadequate training, (3) there is no evidence that the canine handler in this case (Paul) had inadequate training, and (4) the police dog (Ike) had merely apprehended Plaintiff by the left shoulder–and did not bite Plaintiff in the face/ear–before Plaintiff struck the police dog. Thus, several key factors in *White* (*i.e.*, the existence of a "little-trained" police dog, a "little-trained" canine handler, and a handcuffed suspect) were not present in this case.

It is true that, when accepting Plaintiff's version of the events that night, there are two minor,

inter-related matters that differentiate this case from *Robinette* and *Matthews*.  First, Plaintiff states

that Paul did not call out any warnings to Plaintiff when the police dog alerted Paul to Plaintiff's

presence.  Second, Paul released the police dog without warning Plaintiff that the police dog would

be released if Plaintiff did not surrender.  As Plaintiff admits, however, he:

> (1)   was laying face down in the snow with his hands underneath him such that the police
>        officers did not know if Plaintiff was armed,
>
> (2)   didn't respond when he knew the officers–and the police dog–were present (and
>        apparently silent), including when he was aware that the police officers were shining
>        a flashlight at Plaintiff,
>
> (3)   did not bring his hands out from underneath his body until he struck the police dog,
>
> (4)   did not say he gave up until after the police dog had grabbed Plaintiff by the
>        shoulder, and
>
> (5)   pushed the dog in the face/snout prior to being bitten in the face/ear.

Based on those five facts, the Court finds that, even if Paul gave no warnings prior to releasing the

police dog: (a) there is no evidence of an intent on the part of Paul to create a substantial risk of

death or serious bodily harm, and (b) no evidence that the police dog (Ike) was not used in an

"appropriate manner." *See Matthews*, 35 F.3d at 1051 (citing *Robinette*, 854 F.2d at 912-13).

Finally, the Court notes that the Sixth Circuit's "observations in *Robinette*, relative to [its]

reluctance to label 'unreasonable' the police practice of using police dogs, are equally [instructive

and] applicable here":

> [W]e believe that [police] dogs can often help prevent officers from
> having to resort to, or be subjected to, [deadly] force.  Any attempt
> to apprehend a criminal suspect presents the officer with [a] difficult
> and frightening situation, but certainly an attempt to arrest a suspect
> hidden inside an unfamiliar building during the nighttime presents a
> particularly confusing one.  The use of dogs can make it more likely
> that the officers can apprehend suspects without the risks attendant
> to the use of firearms in the darkness, thus, frequently enhancing the

15

safety of the officers, bystanders, and the subject.

*Matthews*, 35 F.3d at 1052 (quoting *Robinette*, 854 F.2d at 914).

For the foregoing reasons, this Court concludes "that there is no dispute as to the facts material to the issue of whether use of the police dog to apprehend [Plaintiff] constituted excessive force, and that no reasonable jury could conclude that the use of the police dog to apprehend [Plaintiff] was not objectively reasonable." *Matthews*, 35 F.3d at 1052.

  *3.*   *Failure to Intervene and Prevent Goecker's Use of Excessive Force*

Again, for purposes of this Opinion, the Court must accept as true Plaintiff's testimony that Goecker punched Plaintiff three times. Thus, the Court turns to Plaintiff's argument that "[a] question of fact exists as to whether Defendant Paul is also liable under the Fourth Amendment for failing to prevent or stop Defendant Goecker's use of excessive force against Plaintiff." As the Sixth Circuit has stated:

> [A] police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.

*Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

In support of his argument that Paul is liable for failing to prevent or stop Goecker's alleged use of excessive force against Plaintiff, Plaintiff offers exactly zero evidence. None. Rather, after Plaintiff cites a number of cases where a police officer was not entitled to summary judgment because he or she had a duty to intervene when the officer saw a citizen's constitutional rights being violated, Plaintiff offers only the following conclusory statements:

> As such, even though Defendant Paul never personally touched Plaintiff, his failure to intervene and stop Officer Goecker's excessive use of force imparts liability to him.

16

> As this Court is aware, Defendant Goecker has not moved for summary judgment on the excessive force claim . . . asserted against him for the reason that questions of fact exist.  As such, Defendant Paul's motion must be denied for if the jury determines that Defendant Goecker is liable, Defendant Paul may also be held liable for failing to prevent or stop Defendant Goecker's excessive use of force.

Such conclusory statements, however, are devoid of any facts upon which this Court (or a reasonable jury) could determine how Paul failed to intervene and prevent or stop any excessive force used by Goecker.

In addition, Paul has testified that he did not see Goecker punch Plaintiff at any time, and Plaintiff has not testified that Paul observed Goecker punching Plaintiff.  Likewise, there is no evidence in the record that Paul had any reason to know that Goecker was going to punch Plaintiff. There also is no evidence of Paul's proximity to Goecker when the alleged punches were made. Finally, there is no evidence regarding the amount of time that elapsed between when the alleged battering by Goecker began and when such alleged battering ended.

Accordingly, the Court finds that there is no genuine dispute of material fact–or any evidence–from which the Court could conclude that Paul observed Goecker use, or that Paul had reason to know that Goecker would use, excessive force against Plaintiff, as required by the first element of *Turner*.  More importantly, even if the Court assumes that Paul did observe Goecker punch Plaintiff, there is no evidence to create a genuine issue of material fact as to the second element of Turner, *i.e.*, that Paul "had both the opportunity and the means to prevent the harm from occurring." *Id*.  Therefore, the Court concludes that Plaintiff's excessive force claim against Paul, to the extent the claim is based on a failure to intervene and prevent or stop Goecker's alleged use of excessive force, must fail as a matter of law.

17

4.     *Conclusion*

For the reasons set forth in this Section IV.C., the Court holds that: (a) Plaintiff's § 1983 excessive force claim against Paul is not sustainable, as a matter of law, and (b) Paul is entitled to summary judgment.

**D.     City of Swartz Creek**

As discussed in Section IV.B. above, the City, as a municipal entity, cannot be held liable on a theory of *respondeat superior.* Rather, in order to have a viable action against the City, Plaintiff must demonstrate that the City itself is the wrongdoer. *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992). As with Plaintiff's excessive force claim against the Township, Plaintiff offers a very limited discussion why the City's motion for summary judgment should be denied. Plaintiff's argument, in its entirety, is:

> Here, Defendant Paul testified that although he had received some training, he was unaware of the protocol regarding engaging a police dog on a juvenile, or on a suspect who is lying face down on the ground, or on a suspect who is surrendering to the police. ... Further, Defendant Paul's failure to intercede when Defendant Goecker was beating the body and face of a helpless and compliant boy further demonstrat[es] that [the City] failed to adequately train its officers to protect citizens from brutal attacks committed by police officers.
>
> Due to such inadequate training and failure to supervise, Plaintiff respectfully requests that [the City]'s Motion for Summary Judgment as to municipal liability be denied.

As set forth in Section IV.B. above, there are three elements a plaintiff must prove in order to prevail on a § 1983 failure to train claim:

> (1) "that a training program is inadequate to the tasks that the officers must perform"; (2) "that the inadequacy is the result of the [Township]'s deliberate indifference"; and (3) "that the inadequacy is 'closely related to' or 'actually caused' [Plaintiff's] injury."

18

*Plinton*, 540 F.3d at 464 (citations omitted).  The Court finds that Plaintiff cannot demonstrate a genuine dispute of material fact with respect to any of the three elements with respect to the City.

As to the alleged inadequacy of the training program, Paul testified that he was unfamiliar with protocols regarding police dogs as it pertained to juveniles, suspects lying face down or suspects who are surrendering to police.  The Court finds such "facts" irrelevant to ascertaining the adequacy of the City's training program.  First, Plaintiff proffers no language from any source that shows that there are protocols pertaining to any of those three situations.  Second, the evidence in the record reveals that Paul was not aware that Plaintiff was a juvenile; in fact, Paul testified that he was told that the suspects he was tracking were in their late teens to early twenties.  Third, as the *Matthews* case makes clear, it is constitutionally permissible to use a police dog to track and apprehend a suspect, including one who is lying face down with his hands concealed beneath his body. *Matthews*, 35 F.3d at 1051.  Fourth, there is no evidence in the record that shows that Plaintiff surrendered to the police officers when the police dog tracked and apprehended Plaintiff; in fact, Plaintiff's testimony reveals that he: (1) did not bring his hands out from underneath his body until he struck the dog, and (2) did not say he gave up until after the police dog had grabbed Plaintiff by the shoulder.

In addition, the City has submitted undisputed and extensive deposition testimony from Paul, as well as documentation of training classes, as to: (a) Paul's initial canine officer training at an academy with his police dog, (b) weekly training and annual recertification of Paul through a week-long course, and (c) numerous training courses offered by different organizations that Paul has been through.  Therefore, the Court finds that there is no evidence to support a genuine dispute that the City's canine training program is inadequate.

19

The Court also finds that there is no evidence of deliberate indifference by the City.  There is no evidence of Paul had ever improperly used a police dog, nor any evidence that the police dog at issue (Ike) had ever acted in an inappropriate manner.  The evidence reveals that Paul has never been disciplined while employed by the City.  The evidence also reveals that, prior to this case, Paul had never been: (1) the subject of a citizen complaint, (2) a defendant in a lawsuit, or (3) accused of using excessive force.

Finally, as Plaintiff cannot show that the City had an inadequate canine training program or that the City was deliberately indifferent, the cause of the injury could not have been caused by – nor could it be closely related to – the alleged inadequacy of the training program.

Therefore, for the reasons set forth in this Section IV.D., the Court: (a) finds that Plaintiff's § 1983 excessive force claim against the City fails as a matter of law, and (b) concludes that the City's motion for summary judgment must be granted.

## V.  CONCLUSION

Accordingly, and for the above reasons, IT IS HEREBY ORDERED that:

1.  The Motion for Summary Judgment filed by Paul and the City (Docket #18) is GRANTED as it pertains to Plaintiff's § 1983 excessive force claims against Paul and the City;

2.  The Motion for Partial Summary Judgment filed by Goecker and the Township (Docket #20) is GRANTED as it pertains to Plaintiff's § 1983 excessive force claim against the Township;

3.  Plaintiff's federal claims against Paul, the City and the Township are hereby DISMISSED WITH PREJUDICE; and

4.  The only remaining claim before this Court is Plaintiff's § 1983 excessive force claim against Goecker, to the extent such claim is based on the alleged punches Goecker used to cause injury to Plaintiff.

2:11-cv-11706-LPZ-MJH   Doc # 27   Filed 06/21/12   Pg 22 of 22    Pg ID 511

IT IS SO ORDERED.


                                             S/Lawrence P. Zatkoff
                                             LAWRENCE P. ZATKOFF
                                             UNITED STATES DISTRICT JUDGE

Dated:  June 21, 2012

CERTIFICATE OF SERVICE

     The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 21, 2012.


                                               S/Marie E. Verlinde
                                             Case Manager
                                             (810) 984-3290